No. 107,673

STATE OF KANSAS, *Appellee*, v. ERIK PETTAY, *Appellant*.

(326 P.3d 1039)

Opinion filed June 6, 2014.

*Rick Kittel*, of Kansas Appellate Defender Office, was on the briefs for appellant.

*Daniel D. Gilligan*, assistant district attorney, *Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: Erik Pettay seeks review of a Court of Appeals decision approving the admission of drug evidence obtained during a vehicle search incident to his arrest for driving with a suspended license. The search occurred 2 days before the United States Supreme Court's decision in *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009) (invalidating certain searches incident to arrest). Both parties agree *Gant* rendered the search illegal. See *State v. Henning*, 289 Kan. 136, 148-49, 209 P.3d 711 (2009) (following *Gant*). The lingering issue is whether the State can still use the illegally seized evidence under a good-faith exception to the exclusionary rule recognized by this court for pre-*Gant* searches incident to a lawful arrest. See *State v. Daniel*, 291 Kan. 490, 505, 242 P.3d 1186 (2010), *cert. denied* 131 S. Ct. 2114 (2011) (allowing evidence obtained based on officer's objectively reasonable reliance on constitutionality of K.S.A. 22-2501[c]); see also *State v. Carlton*, 297 Kan. 642, 647, 304 P.3d 323 (2013) (same); *State v. Karson*, 297 Kan. 634, 641, 304 P.3d 317 (2013) (same); *State v. Dennis*, 297 Kan. 229, 240, 300 P.3d 81 (2013) (same).

Pettay argues the good-faith exception should not apply in his case because the search exceeded the physical scope permitted by K.S.A. 22-2501 (repealed July 1, 2011, by L. 2011, ch. 100, sec. 22). He is the first litigant to present this precise issue to this court. See *Dennis*, 297 Kan. at 239-40 (specifically noting defendant did not argue the search was outside his immediate presence or the statute's permissible physical scope); *Daniel*, 291 Kan. at 501-02 (same). But our Court of Appeals has addressed the issue with varying results. See *State v. Davison*, 41 Kan. App. 2d 140, 148, 202 P.3d 44 (2009) (automobile search did not exceed K.S.A. 22-

2501's physical scope limitation, even though defendant was removed from car, handcuffed, and placed in patrol car before the vehicle search, *rev'd by* Supreme Court order dated October 9, 2009); but see *State v. Oram*, 46 Kan. App. 2d 899, 914, 266 P.3d 1227 (2011) (good-faith exception not available when officers searched vehicle incident to arrest when defendant was handcuffed and secured in patrol car because vehicle was not within defendant's immediate presence); *State v. Sanders*, 5 Kan. App. 2d 189, 196-97, 614 P.2d 998 (1980) (when defendant secured behind vehicle, vehicle is no longer within arrestee's immediate control).

K.S.A. 22-2501 directs that an officer "may reasonably search the person arrested *and the area within such person's immediate presence.*" (Emphasis added.) When Pettay's vehicle was searched, he was handcuffed and secured in a patrol car. The Court of Appeals agreed with the State that a good-faith exception should apply based on the factual similarities with the search in *Daniel. State v. Pettay*, No. 107,673, 2013 WL 1149745, at *8, (Kan. App. 2013) (unpublished opinion).

We disagree with that outcome. The State's arguments do not justify application of a good-faith exception in light of the plain language of K.S.A. 22-2501, which had been held to statutorily control the permissible circumstances, purposes, and scope for a search incident to arrest long before Pettay's vehicle search. See *State v. Conn*, 278 Kan. 387, 391, 99 P.3d 1108 (2004); *State v. Anderson*, 259 Kan. 16, 22, 910 P.2d 180 (1996). Based on the issues as presented by the parties, we reverse the Court of Appeals panel, reverse the district court's order, and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 19, 2009, a Reno County Sheriff's deputy initiated a traffic stop of Pettay's vehicle. The deputy had learned the vehicle's owner, who matched Pettay's description, had a suspended driver's license. Pettay acknowledged the suspended license and could not produce proof of current insurance. The deputy handcuffed Pettay and put him in the backseat of a patrol car. Another officer stayed with Pettay while the deputy conducted a warrantless search of Pettay's vehicle incident to his arrest. During the search, the dep-

uty found a multicolored glass pipe on the passenger-side floorboard.

The pipe contained a residue the deputy believed to be marijuana, which later testing confirmed. Pettay subsequently waived his *Miranda* rights during questioning. He admitted the pipe was his and that he had smoked marijuana the night before. The State charged Pettay with felony possession of marijuana, failure to provide proof of liability insurance, and driving with a suspended license. See K.S.A. 2008 Supp. 8-262 (suspended license); K.S.A. 2008 Supp. 40-3104 (proof of insurance); K.S.A. 2008 Supp. 65-4162(a)(3) (possession).

Two days after his arrest, the United States Supreme Court decided *Gant*, which prohibits warrantless vehicle searches incident to arrest unless the arrestee is within reaching distance of the passenger compartment at the time of the search or there is a reasonable belief the vehicle contains evidence of the crime of arrest. *Gant*, 556 U.S. at 351; see also *Henning*, 289 Kan. at 148-49. Relying on *Gant* and *Henning*, Pettay moved to suppress the drug evidence.

The State conceded the search was illegal under *Gant* but asserted the evidence should not be suppressed because the deputy relied in good faith on controlling law in effect at the time of the search, citing K.S.A. 22-2501(c) and *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981). The district court ruled a good-faith exception did not apply because neither *Gant* nor *Henning* referred to it when suppressing the evidence in those cases, and granted Pettay's motion. The State filed an interlocutory appeal.

While that appeal was pending, this court issued its opinion in *Daniel*, 291 Kan. at 493, which held an officer's pre-*Gant* vehicle search incident to arrest was subject to the good-faith exception to the exclusionary rule based on the officer's objectively reasonable reliance on K.S.A. 22-2501(c), which authorized searches incident to arrest to discover "the fruits, instrumentalities, or evidence of *a* crime." (Emphasis added.) Relying on *Daniel*, the Court of Appeals summarily reversed the district court's suppression order in Pettay's case and remanded for further proceedings. See Supreme

Court Rule 7.041 (2013 Kan. Ct. R. Annot. 62) (authorizing summary disposition).

On remand, Pettay continued to press the suppression issue. He advanced an argument based on a then-recently released Court of Appeals panel's decision in which a majority of the panel held that *Daniel* did not mandate application of a good-faith exception because the officer in that case had not expressly claimed he was relying on K.S.A. 22-2501(c) to conduct the pre-*Gant* search. See *State v. Dennis*, No. 101,052, 2011 WL 425987, at *3 (Kan. App. 2011) (unpublished opinion), *rev'd* 297 Kan. 229, 300 P.3d 81 (2013). Pettay also argued the vehicle was not within his "immediate presence" at the time of the search as specified by K.S.A. 22-2501, which is the principal focus in this appeal.

The district court refused to suppress the evidence, holding it was obliged to follow *Daniel*. The district court found Pettay guilty on all charges after a bench trial on stipulated facts. It imposed sentences on all counts, including 18 months' community corrections with an underlying 12-month prison term for the possession of marijuana conviction. Pettay timely appealed to the Court of Appeals.

In an unpublished opinion, a Court of Appeals panel affirmed the district court's denial of Pettay's motion to suppress. *Pettay*, 2013 WL 1149745, at *8. The panel held the good-faith exception articulated in *Daniel* applied, even though the deputy had not explicitly said he relied on K.S.A. 22-2501. It also rejected Pettay's argument that the search exceeded the physical scope authorized by K.S.A. 22-2501. It held "well-trained law enforcement officers in Kansas could not have known that it was unlawful to search a car after the defendant had been handcuffed and placed in the backseat of a patrol car until the United States Supreme Court's decision in *Gant*." *Pettay*, 2013 WL 1149745, at *7.

In so ruling, the panel relied on *Daniel*, expressly noting the facts in *Daniel* were markedly similar to Pettay's circumstances. *Pettay*, 2013 WL 1149745, at *5. The panel also rejected the analysis that led a different Court of Appeals panel to reach a contrary result in *Oram*. *Pettay*, 2013 WL 1149745, at *7.

Pettay timely petitioned for review, which we granted. Jurisdiction is proper under K.S.A. 20-3018(b).

ANALYSIS

Pettay argues the good-faith exception is inapplicable because (1) there was no evidence the deputy actually relied on K.S.A. 22-2501(c) when he searched the car; and (2) the car was not within Pettay's immediate presence when it was searched, *i.e.*, the search was outside the statute's permissible scope. The State argues this case is factually indistinguishable from *Daniel* and that the car was within Pettay's immediate presence.

*Standard of Review*

The district court's factual findings on a motion to suppress evidence are reviewed for substantial competent evidence. The legal conclusions drawn from that evidence are reviewed de novo. *Daniel*, 291 Kan. at 495. The facts in Pettay's case are undisputed. Accordingly, the district court's decision as to whether suppression was warranted is reviewed de novo. See 291 Kan. at 495.

*Discussion*

Warrantless searches are considered unreasonable and invalid unless they fall within recognized exceptions to the warrant requirement. The State bears the burden to demonstrate a challenged search was lawful. 291 Kan. at 496. In Pettay's case, it is undisputed there was no warrant authorizing the vehicle search, and the State agrees the search was unlawful under *Gant* and *Henning*. The only question then is whether the appropriate remedy is to suppress the illegally seized evidence. This is a question of law. See 291 Kan. at 496.

Neither the Fourth Amendment nor its state counterpart in § 15 of the Kansas Constitution Bill of Rights prohibits the use of illegally seized evidence in criminal proceedings. Instead, an exclusionary rule has developed, which is a judicially created remedy that safeguards Fourth Amendment rights by preventing the use of unconstitutionally obtained evidence in criminal proceedings against victims of illegal searches. 291 Kan. at 496 (citing *Illinois*

*v. Krull*, 480 U.S. 340, 347, 107 S. Ct. 1160, 94 L. Ed. 2d 364 [1987]).

But the exclusionary rule is not absolute. See *United States v. Leon*, 468 U.S. 897, 906, 104 S. Ct. 3405, 82 L. Ed. 2d 677, *reh. denied* 468 U.S. 1250 (1984). It is a deterrent measure, not a personal constitutional right. *Daniel*, 291 Kan. at 496. Therefore, its application is " 'restricted to those situations in which its remedial purpose is effectively advanced.' " 291 Kan. at 496 (quoting *Krull*, 480 U.S. at 347). "[Q]uestions regarding whether evidence should be excluded as a sanction for a Fourth Amendment violation should be answered by weighing the costs and benefits of preventing the prosecution's use of illegally obtained evidence." 291 Kan. at 497 (citing *Leon*, 468 U.S. at 907); see also *Davis v. United States*, 564 U.S. 229, 236-37, 131 S. Ct. 2419, 180 L. Ed. 2d 285 (2011) (suppression unwarranted when it fails to yield appreciable deterrence; deterrent value necessary for exclusion but must always be weighed against social costs).

Pettay first claims the good-faith exception for objectively reasonable reliance on K.S.A. 22-2501(c) cannot apply because the deputy did not testify he relied on the statute in conducting the search. This claim is without merit. Whether the exception should apply turns on whether, at the time of the search, an objectively reasonable officer could rely on the statute, not on whether the officer subjectively had the statute in mind. *Dennis*, 297 Kan. at 230 (testimony that search was "incident to arrest" sufficient basis to apply good-faith analysis; not necessary to recite the statute); see also *Karson*, 297 Kan. at 640-41 (same).

But Pettay's "immediate presence" argument, *i.e.*, whether the search was within the statute's permissible physical scope, requires more detailed consideration. At the time of Pettay's arrest, Kansas had codified the scope of police authority to perform searches incident to arrest. That statute provided:

"When a lawful arrest is effected a law enforcement officer may reasonably search the person arrested and the area within *such person's immediate presence* for the purpose of
"(a) Protecting the officer from attack;
"(b) Preventing the person from escaping; or

"(c) Discovering the fruits, instrumentalities, or evidence of a crime." (Emphasis added.) K.S.A. 22-2501.

As readily seen, when it was in effect, K.S.A. 22-2501 authorized searches incident to arrest, but it also limited the physical scope and expressly stated the limited purposes of that search. See *Daniel*, 291 Kan. at 501; *Conn*, 278 Kan. at 391; *Anderson*, 259 Kan. at 22. The physical scope was specified to be the arrestee's "immediate presence," and the limited purposes were set out in the statute's subsections. *Daniel*, 291 Kan. at 501.

The State argues the "immediate presence" limitation is expanded by federal caselaw such as *Belton* and its progeny to permit a vehicle search even while the arrestee is secured away from the vehicle. But our court has expressly rejected that argument and held federal Fourth Amendment caselaw, such as the *Belton* line of cases, does not expand the statute's plain language. See *Conn*, 278 Kan. at 391 (rejecting view that Fourth Amendment caselaw would automatically authorize automobile search after occupant arrested); *Anderson*, 259 Kan. at 22 ("The statute may possibly be more restrictive than prevailing case law on the Fourth Amendment would permit, but this does not alter the plain language of the statute.").

We hold that after *Conn* and *Anderson*, a law enforcement officer conducting a search incident to arrest could not objectively reasonably rely on federal caselaw to enlarge the physical scope set out in K.S.A. 22-2501 beyond the statute's plain language, which limited the search to the subject's "immediate presence."

Admittedly, some Kansas appellate cases issued before our decision in *Daniel*, such as the Court of Appeals' decision in *State v. Karson*, 44 Kan. App. 2d 306, 235 P.3d 1260 (2010), *aff'd* 297 Kan. 634, 304 P.3d 317 (2013), which the State cites as authority, recognized a good-faith exception based on the *Belton* line of cases. But those Court of Appeals cases considered K.S.A. 22-2501 to be coextensive with federal search-incident-to-arrest caselaw, which is a proposition contradicted by this court's prior caselaw. Compare *Conn*, 278 Kan. at 391, and *Anderson*, 259 Kan. at 22, with *Karson*, 44 Kan. App. 2d at 310-14.

Even so, the *Karson* Court of Appeals decision came after the search of Pettay's vehicle, so it cannot justify the deputy's actions. See *Daniel*, 291 Kan. at 504-05 (officer's objectively reasonable reliance on statute demonstrated by appellate decisions that predated search). Indeed, the State cites no prior appellate court decision on the permissible physical scope of a search under K.S.A. 22-2501 to justify the Pettay search. An issue not briefed on appeal is deemed waived. See *Dennis*, 297 Kan. at 240 (declining to consider defendant's scope-of-search argument because defendant failed to address statutory language); see also *Daniel*, 291 Kan. at 501-02 (noting defendant did not argue items seized were outside his immediate presence).

The State also argues *Daniel* controls the outcome because of its factual similarity, but that argument does not consider that the legal arguments here are different. *Daniel* was resolved solely on the ground that an officer's reliance on the legislatively enacted language in K.S.A. 22-2501(c) in conducting a pre-*Gant* search was objectively reasonable. The defendant in *Daniel* claimed only that the search violated *Gant*; he did not argue the search occurred outside the defendant's immediate presence, so we did not address that issue. See 291 Kan. at 501-02.

Pettay, however, ventures precisely where the defendant in *Daniel* did not. He argues that at the time of the search the deputy could not have relied on the authority imparted by K.S.A. 22-2501 because the physical scope of the search exceeded that statute's express language, *i.e.*, "immediate presence," because he was handcuffed and secured in a patrol car. *Daniel*'s factual similarity is unavailing because Pettay advances different legal arguments arising from those facts that Daniel did not. We hold Pettay's search exceeded the physical scope authorized by the statute and, necessarily, exceeded the authority conferred upon the deputy by K.S.A. 22-2501.

The only remaining question is whether applying the exclusionary rule would serve the purpose of deterring future law enforcement misconduct. See *Davis*, 131 S. Ct. at 2426; *Karson*, 297 Kan. at 639 (noting purpose of exclusionary rule is to deter future violations by the State). We hold that it does, although it is a closer

call given the contradictory caselaw prior to the search from the Court of Appeals. See *Davison*, 41 Kan. App. 2d at 148; *Sanders*, 5 Kan. App. 2d at 196-97.

But the prior caselaw from this court in *Conn* and *Anderson* held that K.S.A. 22-2501 was not made more expansive by the *Belton* line of cases, so we hold that the better view is that the State has an obvious interest in ensuring law enforcement officers comply with the plain language of a statute authorizing a warrantless search. No other remedy but suppression can effectively serve that interest in this instance.

Since no other justification is offered to save the search results, we reverse the Court of Appeals and the district court in their application of the good-faith exception to the exclusionary rule and remand this case for further proceedings consistent with this opinion.

* * *

JOHNSON, J., concurring: I wholeheartedly agree with the result in the majority opinion. Yet, I write separately for a few self-indulgent reasons.

First, I want to reiterate my belief that this court should not have expanded the good-faith exception to the suppression of evidence for an unconstitutional search beyond the exception we had previously adopted from *United States v. Leon*, 468 U.S. 897, 906, 104 S. Ct. 3405, 82 L. Ed. 2d 677, *reh. denied* 468 U.S. 1250 (1984). See *State v. Daniel*, 291 Kan. 490, 505-09, 242 P.3d 1186 (2010), *cert. denied* 131 S. Ct. 2114 (2011) (Johnson, J., dissenting). The *Leon* exception for an officer who relies in good faith upon an invalid warrant is premised upon the notion that a judge has made a determination of probable cause, *i.e.*, we permit a member of the executive branch to rely in good faith upon the legal opinion of a member of the judicial branch. The *Daniel* exception, however, allows an executive branch law enforcement officer to perform the judicial branch function of interpreting a statute—an act we routinely declare to be a question of law subject to unlimited appellate review—for the purpose of determining whether the officer can

lawfully conduct a search, *i.e.*, we place the fox in charge of the henhouse.

Next, I cannot accept the majority's suggestion that the only purpose of the exclusionary rule is to deter illegal police action. As a popular commentator has explained:

"But the rule serves other purposes as well. There is, for example, . . .'the imperative of judicial integrity,' namely, that the courts not become 'accomplices in the willful disobedience of a Constitution they are sworn to uphold.' . . . A third purpose of the exclusionary rule, as stated most clearly by some members of the Court, is that 'of assuring the people—all potential victims of unlawful government conduct—that the government would not profit from its lawless behavior, thus minimizing the risk of seriously undermining popular trust in government.' This is not merely another statement of the deterrence objective, for the emphasis is on the effect of exclusion upon the public rather than the police." 2 LaFave, Criminal Procedure § 3.1(b), p. 7 (3d ed. 2007).

Similarly, I do not subscribe to the majority's apparent suggestion that each suppression case should be subjected to an ad hoc cost/benefit analysis. In my view, exclusion of unconstitutionally seized evidence should be the general rule, subject only to narrow exceptions.

Next, even if one accepts the expansion of the good-faith exception in this State to include a law enforcement officer's objectively reasonable reliance on a statute, the majority's holding in this case serves to point out why the statutory-reliance exception was inapplicable in *Daniel* and its progeny. Here, the majority specifically points to *State v. Conn*, 278 Kan. 387, 391, 99 P.3d 1108 (2004), for the proposition that Fourth Amendment caselaw does not automatically authorize an automobile search after the occupant is arrested, and to *State v. Anderson*, 259 Kan. 16, 22, 910 P.2d 180 (1996), for the proposition that the plain language of K.S.A. 22-2501 applies, even if it may be more restrictive than prevailing caselaw on the Fourth Amendment. That leads the majority to declare "that after *Conn* and *Anderson*, a law enforcement officer conducting a search incident to arrest could not objectively reasonably rely on federal caselaw to enlarge the physical scope set out in K.S.A. 22-2501 beyond the statute's plain language, which limited the search to the subject's 'immediate presence.'"

The searches in *State v. Carlton*, 297 Kan. 642, 647, 304 P.3d 323 (2013); *State v. Karson*, 297 Kan. 634, 635, 304 P.3d 317 (2013); *State v. Dennis*, 297 Kan. 229, 240, 300 P.3d 81 (2013); and *Daniel*, 291 Kan. at 505, all occurred after *Conn* and *Anderson*, and all involved the search of the arrested defendant's automobile after the defendant had been handcuffed and placed beyond the immediate presence of the vehicle. Therefore, none of the law enforcement officers involved in those cases could have objectively reasonably relied on K.S.A. 22-2501 as providing the authority to conduct the searches.

The majority in the prior cases determined that, because the defendant did not argue that the searched automobile was not within the arrestee's immediate presence, the State could block the suppression of the fruits of the unconstitutional searches and seizures by arguing for the first time on appeal that the law enforcement officers were acting in good faith. Yet, as the majority here acknowledges, the State bears the burden to demonstrate that a challenged search is lawful. In my view, the State does not fulfill that burden by proving partial compliance with the law, *e.g.*, merely establishing that the search comports with federal Fourth Amendment jurisprudence or only showing why the search would comply with subsection (c) of K.S.A. 22-2501. To the contrary, the State's burden is to demonstrate that the challenged search is lawful in all respects, including each and every provision of Kansas statutory law. In all of these cases, it is undisputed that the State failed to prove that the search incident to arrest involved "the area within [the arrested] person's immediate presence," which was required in order for the State to meet its burden to demonstrate that the challenged search was lawful. See K.S.A. 22-2501. A defendant does not have to disprove that the area was within his or her immediate presence.

Further, if the State seeks to excuse an unconstitutional search based upon the *Daniel* good-faith exception, surely it must assume the burden of establishing that the officer acted in objectively reasonable reliance upon the applicable statute. But utilizing the majority's own rationale, after *Conn* and *Anderson* an officer could not reasonably believe that he or she could search an automobile

that was beyond the immediate presence of an arrestee. Consequently, the State, as a matter of law, could not meet its burden of establishing objectively reasonable good faith, regardless of the arguments propounded by the defendant. Accordingly, I would not have applied a good-faith exception to any of the searches where the automobile was outside the arrestee's immediate presence, *i.e.*, I would not have applied a good-faith exception where it was precluded as a matter of law.