NOT DESIGNATED FOR PUBLICATION

No. 113,838

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

EDIO ESTRADA, JR.,
*Appellee*.

MEMORANDUM OPINION

Appeal from Pratt District Court; FRANCIS E. MEISENHEIMER, judge. Opinion filed May 13, 2016. Affirmed.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellant.

*Charles A. O'Hara*, of O'Hara & O'Hara LLC, of Wichita, for appellee.

Before STANDRIDGE, P.J., PIERRON, J., and JOHNSON, S.J.

PIERRON, J.: Edio Estrada, Jr. was charged with two counts of involuntary manslaughter, one count of driving while suspended, and one count of improper driving on the left side of the road, following an automobile accident in May 2014. Prior to trial, the State moved the district court to determine whether evidence from a blood draw taken from Estrada shortly after the accident was admissible. After a pretrial hearing, the court found that law enforcement officers had not obtained a valid consent for the blood draw and ruled the test results were inadmissible. The State filed a timely interlocutory appeal.

1

We have two main issues here. The first is whether the district court erred by ruling to suppress the blood-alcohol evidence for lack of consent and whether the officer's belief that he had a valid consent prescribed the suppression of the evidence.

The State filed notices of its intent to proffer toxicology reports from the Kansas Bureau of Investigation (KBI). The first report indicated Estrada's blood tested positive for tetrahydrocannabiol (THC), the principal psychoactive component of marijuana. The second report indicated he tested positive for difluroethane, an inhalant.

Prior to a preliminary hearing, the State moved for a district court ruling on the admissibility of the blood test results. The State argued that the implied consent found in K.S.A. 2013 Supp. 8-1001(b) was not triggered in this case, because Estrada was not under arrest at the time the blood draw was requested or taken, and the officer did not have reasonable grounds to believe that Estrada had been driving under the influence of alcohol or drugs. Because the implied consent law was not triggered, the officer simply asked Estrada for a blood draw, and Estrada consented. *Miranda* warnings had not been given.

Instead of applying K.S.A. 2013 Supp. 8-1001(b), the State relied on Estrada's consent at the scene of the crash to support the constitutionality of the blood draw. The State contended the consent was freely given, as indicated by the lack of coercive indicia and the fact that Estrada did not ask any questions or suggest that he was reconsidering or withdrawing his consent. Additionally, the State asserted that nothing negated Estrada's consent, and that his consent remained free and voluntary.

Deputy Joseph Ohler, one of the officer involved in the investigation, believed that he was required to read the implied consent form, even though consent had already been given, based on the language of the statute. The State contends the reading of the implied consent form did not coerce Estrada, even though the admitted purpose of the law is to

2

coerce consent to a blood draw, as Estrada continued to consent to the blood draw. This consent also obviated the need for a search warrant.

At a pretrial hearing, limited to the issue of whether Estrada's consent was voluntary, Deputy Ohler testified that he was a deputy sheriff with the Pratt County Sheriff's Department, and he had been dispatched to a car accident scene on May 2, 2014. Before he arrived, he had been informed over the radio that the accident involved multiple fatalities. He was assigned to deal with Estrada, who had been driving a pick-up truck involved in the accident, had been seen to by EMS, and was sitting in the back of a police vehicle, although he was not in handcuffs. Before speaking to Estrada, the trooper in charge of the scene spoke with Deputy Ohler about obtaining a blood draw. Deputy Ohler asked Estrada if he was willing to go to the hospital for a blood draw, which he explained was a standard course of action in such a severe accident. Estrada agreed without voicing any concerns. Deputy Ohler did not advise Estrada that refusal was an option or read him his *Miranda* rights. Estrada told him he had previously had blood drawn after an accident in Texas, but he did not say anything else about that accident. Deputy Ohler stated he did not observe any impairment in Estrada's behavior or speech, and his only explanation to Estrada regarding the blood draw was that it was standard procedure in fatal automobile accidents.

Deputy Ohler testified that he escorted Estrada to the front of his patrol car, without restraining him, and drove him to the hospital, where he observed that Estrada had some minor abrasions on his arms and leg, none of which were bleeding. Deputy Ohler did not stop at a police station or jail before going to the hospital. The drive took approximately 10 minutes, during which time Estrada did not ask any questions or make any comments about the blood draw. At the hospital, Deputy Ohler informed a nurse, upon inquiry, that Estrada was not under arrest. Deputy Ohler testified that prior to the blood draw he read an implied consent advisory to Estrada. He did so because he thought that he was supposed to based on his investigatory experience, even though he did not

3

believe that the implied consent law was triggered because he did not have probable cause to believe that Estrada was under the influence of alcohol or drugs. Estrada did not ask him any questions, indicate that he was hesitant to give the blood, fail to cooperate with the blood draw, or state that he regretted giving the blood. After the blood draw, Estrada received treatment from the hospital and left with Deputy Ohler and another officer, although still not under arrest. Deputy Ohler did not fill out any paperwork related to a driving under the influence investigation or take any action against Estrada's license.

On cross-examination, Deputy Ohler testified that he was unaware of when Estrada was put into custody. Deputy Ohler testified he had read the entire implied consent advisory out loud, confirming that he read it to Estrada before hospital staff drew the blood, and verified that he told Estrada, reading from the form, that he did *not* have a constitutional right to refuse the blood draw or to speak with an attorney. Estrada appeared to understand everything Deputy Ohler told him. He also advised Estrada that he could be charged with a separate crime for refusing the blood draw and that his license could also be suspended for a year. Deputy Ohler testified that based on his experience as a law enforcement officer, Estrada had a right to speak to an attorney before the blood draw, despite what he had read from the form. After Deputy Ohler read the form, Estrada agreed to the blood draw.

On redirect-examination, Deputy Ohler confirmed he was supposed to read additional information to Estrada because he was under the age of 21, but he did not recall whether he read that additional information to him. He had no other reason for reading the implied consent advisory to Estrada than he thought he was supposed to do so. The district court permitted the State to enter the results of the blood tests into the record for the sole purpose of showing that there was no alcohol in Estrada's system.

4

In closing, the State argued that the implied consent statute was inapplicable because no officer had reason to believe that Estrada was under the influence of alcohol or drugs. The State also conceded that the implied consent advisory was coercive but asserted that Estrada's behavior and compliance indicated that he freely and voluntarily consented to the blood draw. The State also argued that the Implied Consent Advisory informed officers that they were supposed to use the form in order to get a blood sample. The State noted that even after being read the form, Estrada did not express any concerns or ask any questions, perhaps illustrating that his consent was voluntary.

Following closing arguments from Estrada, the district court found that K.S.A. 2013 Supp. 8-1001 was inapplicable. Estrada argued that the good faith exception did not apply to procuring consent. The court asked for supplemental briefing regarding consent and the good faith exception.

In a supplemental filing, the State argued that Deputy Ohler's belief that he was required to read the implied consent form before administering a blood draw after a fatal crash was a reasonable mistake of law and should not automatically require the suppression of the blood test results. There was no alcohol found in Estrada's system, and no action was taken on Estrada's driver's license under K.S.A. 2013 Supp. 8-1001, indicating that the law had no impact under these facts.

Estrada responded that the implied consent reading advised him that he did not have a constitutional right to refuse to consent to the blood draw or to speak to an attorney and that there were legal consequences for refusing to consent, including being charged with a crime, having his license suspended, and having his refusal used against him at trial. Based on these facts and the State's concession that K.S.A. 2013 Supp. 8-1001(b) was not triggered, he argued that the implied consent advisory reading was a misrepresentation of the law and his rights under the law that coerced him into consenting to the blood draw. He also argued the good faith exception was inapplicable because the

5

officer was not relying on a statute that was later found to be unconstitutional but, rather, applied an inapplicable law that operated as an illegally coercive influence.

At a status hearing, the district court found Estrada had shown no signs of impairment at the accident scene, he was taken to the hospital while not under arrest, and he consented to the blood draw after Deputy Ohler read the implied consent advisory to him. The court also found that Deputy Ohler had not otherwise threatened or coerced, physically or verbally, Estrada to consent to the warrantless blood draw. The court stated that Deputy Ohler mistakenly read the advisory form to Estrada even though the implied consent statute was inapplicable, and the advisory included numerous misstatements of the law regarding Estrada's rights relative to consenting to the blood draw. The court found that the reading of the advisory, while an innocent mistake, was coercive, and the consent given for the blood draw was not valid. The State did not allege that any other warrant exception applied, so the court concluded that the blood draw was an unlawful search and seizure, in violation of the Fourth Amendment to the United States Constitution, and it found that the good faith exception did not apply, as Deputy Ohler was mistaken about the applicability of a valid statute, not reasonably relying on an invalid statute. As such, the court ruled that the test results were inadmissible. The State responded that in light of the ruling, it would be unable to proceed with the prosecution, but it asked a clarifying question, to which the court responded that an individual in Estrada's position could have freely consented to the blood draw in the absence of the implied consent advisory.

The district court entered an order finding that the blood test results were inadmissible. The State filed a timely interlocutory appeal. While the appeal was pending before this court, the State moved for remand for additional findings of fact and conclusions of law, arguing that the district court did not make any findings as to whether the initial consent given at the crash scene was voluntary. The court granted the motion

6

and remanded for the limited purpose of allowing the district court to make additional findings.

On remand, the district court entered a supplemental opinion, initially adopting its previous factual findings. The court found that while at the scene, Estrada agreed to submit to a blood test and stated that he had received a similar request following an accident in Texas. The court also adopted its previous conclusions of law and stated that had Deputy Ohler not read the advisory to Estrada, the court likely would have concluded that his consent was voluntary. However, considering the totality of the circumstances, the court concluded the State had failed to show that Estrada voluntarily consented to the blood draw, as the coercive advisory form was read to him immediately before the blood draw ultimately took place. Therefore, the blood draw was unlawful. The State appeals.

We will first consider whether the district court erred by suppressing the blood evidence for lack of a valid consent.

The State argues that the district court erred by merging two separate instances of consent into its totality of circumstances analysis. The State alleges the second consent given at the hospital, whether it was given after coercive action, had no impact on the initial consent given at the crash scene. In arguing there was no legal support for the temporal scope of the district court's totality of the circumstances analysis, the State relies on cases from the Sixth and Seventh Circuit Courts of Appeals.

The State contends that the initial consent was valid, the consent was never negated prior to the blood draw, and the district court should not have considered the circumstances surrounding the second consent at the hospital when determining whether valid consent existed.

7

All of the circumstances surrounding the initial consent support a finding that it was not coerced and permitted a lawful search and seizure under the Fourth Amendment to the United States Constitution, given the inapplicability of the implied consent statute. The State argues that when this court found a portion of the implied consent statute unconstitutional, it created a gap in the statute with regard to searches in accidents with injuries without probable cause. *State v. DeClerck,* 49 Kan. App. 2d 908, 914-15, 317 P.3d 794, *rev. denied* 299 Kan. 1271 (2014). The State contends that under the Fourth Amendment, we should either reverse the district court's order, because the initial consent was valid, or remand for additional findings of fact consistent with a narrower totality of the circumstances analysis.

Estrada first responds the State failed to argue and brief that the district court's order was not supported by substantial competent evidence, thereby waiving or abandoning any such claim. This failure would also require us to affirm the district court's finding that Estrada's consent to the blood draw was not voluntary, if we find that the district court correctly examined the totality of circumstances. Estrada argues that none of the cases the State cited support its argument for a narrow totality of the circumstances analysis, which is contrary to current law, and the State has abandoned any argument that current law requiring consideration of all of the relevant circumstances should be overturned.

The district court's order was supported by substantial competent evidence. The State does not dispute that the implied consent statute was inapplicable. Estrada had a right to refuse consent and to speak with an attorney even though Deputy Ohler told him he did not have those rights when he read the implied consent advisory at the hospital. Estrada's consent before the blood draw was not voluntary because he had been threatened with consequences for his driver's license without justification under the law. Estrada contends the State is trying, in its brief, to have us treat the district court's legal determination regarding the validity of his consent as a factual determination and reweigh

8

the evidence, which we cannot do. He asserts the district court correctly considered the totality of the circumstances in making its decision.

The State replies it has not argued that the totality of circumstances test presently applied under Kansas law should be overturned, but, rather, contended in its brief that the analysis should not encompass irrelevant conduct that did not impact the initial consent. The State also argues it did not concede that K.S.A. 2013 Supp. 8-1001 was wholly inapplicable, as it argued to the district court that K.S.A. 2013 Supp. 8-1001(a) supported its claim that the blood test results were admissible while acknowledging that K.S.A. 2013 Supp. 8-1001(b) did not apply.

Where, as here, the material facts to the district court's decision regarding evidence suppression are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Stevenson,* 299 Kan. 53, 57, 321 P.3d 754 (2014). Factual findings are reviewed for support by substantial competent evidence. *State v. Spagnola*, 295 Kan. 1098, 1104, 289 P.3d 68 (2012).

The Fourth Amendment to the United States Constitution and Section 15 of the Kansas Constitution Bill of Rights provide protection from unreasonable searches or seizures by the government. *State v. Daniel,* 291 Kan. 490, 496, 242 P.3d 1186 (2010), *cert. denied* 563 U.S. 945 (2011). Collecting a blood sample is both a search and a seizure, so the constitutional protection of the Fourth Amendment applies. *State v. Murry,* 271 Kan. 223, 226, 21 P.3d 528 (2001); *State v. DeClerck,* 49 Kan. App. at 914-15.

Under the Fourth Amendment, a search conducted without a warrant is considered unreasonable unless a specifically established exception applies. The State has the burden to prove that one of the exceptions applies. *State v. Johnson,* 297 Kan. 210, 223, 301 P.3d 287 (2013). The exception potentially at issue here is consent. But if no exception applies and there is no warrant, the illegally obtained evidence typically is barred from admission

9

in criminal trials under the exclusionary rule. *State v. Dennis,* 297 Kan. 229, 235, 300 P.3d 81 (2013).

In order for a consent to search to be valid, two conditions must be met: (1) There must be clear and positive testimony that consent was unequivocal, specific, and freely given; and (2) the consent must have been given without duress or coercion, express or implied. *State v. Ransom,* 289 Kan. 373, Syl. ¶ 4, 212 P.3d 203 (2009). Whether consent was freely and voluntarily given is determined by the totality of the circumstances. *United States v. Drayton,* 536 U.S. 194, 207, 122 S. Ct. 2105, 153 L. Ed. 2d 242 (2002); *Spagnola*, 295 Kan. at 1107.

The appropriate inquiry here is whether a reasonable person would feel free to decline the officer's requests or otherwise terminate the encounter. See *Florida v. Bostick,* 501 U.S. 429, 436, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991) ("Consent that is the product of official intimidation or harassment is not consent at all."). "[T]he Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by implied threat or covert force." *Schneckloth v. Bustamonte,* 412 U.S. 218, 228-29, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973).

In some situations, courts can examine intervening circumstances to determine whether the taint of an illegal seizure can be purged by subsequent valid consent, under the totality of the circumstances. See *State v. Crowder*, 20 Kan. App. 2d 117, 122, 887 P.2d 698 (1994). The facts of this case present the opposite situation, however, wherein the potentially lawful consent came first, followed in time by the illegally obtained consent.

The State asks us to confine the district court's totality of the circumstances consent analysis strictly to the point at the crash scene where Estrada initially agreed to

the blood draw, while ignoring Deputy Ohler's provision of the coercive implied consent rights advisory immediately before consent was again obtained and the blood draw actually took place. The State relies on a case from the Sixth Circuit and a case from the Seventh Circuit to support this request.

In *United States v. Elkins*, 300 F.3d 638, 648-49 (6th Cir. 2002), the court considered two separate incidents of consent given on the same day, but *Elkins* is easily distinguishable from the present case. Each instance of consent in *Elkins* related to the search of a different home, whereas here both instances of consent related to the same search and seizure.

In *United States v. Young*, 471 F.2d 109, 110-11 (7th Cir. 1972), the court concluded that a defendant could not make an effective rescission of consent to search after incriminating evidence was found. Likewise, this case is also readily distinguishable from the instant case. The question here is not whether Estrada successfully withdrew consent before the blood was drawn, but whether Deputy Ohler's second request for consent, preceded by the implied consent advisory, was sufficiently coercive, in light of the totality of circumstances, to render the seizure unlawful on the basis of invalid consent. The State does not cite to any other authority supporting its argument for a narrow scope for the totality of circumstances.

A more instructive case is *State v. Edgar*, 296 Kan. 513, 294 P.3d 251 (2013). In *Edgar*, an officer encountered a driver in a driver's license check lane who did not have a license. After speaking further with the driver, the officer detected a faint smell of alcohol and administered field sobriety tests, which the driver passed. The officer then administered a breathalyzer test, to which the driver consented after the officer told him, as a matter of station procedure, that he did not have the right to either refuse the test or speak with an attorney. The test indicated that the driver was over the legal limit of intoxication. In reviewing the trial court's refusal to suppress the test results, the Kansas

11

Supreme Court applied a totality of the circumstances test when determining if the officer had reasonable suspicion to conduct the breathalyzer test, and the court insisted on broadly examining the "whole picture," such that the field sobriety tests were considered along with other circumstances. 296 Kan. at 521. The court ultimately held that the evidence should have been suppressed, because the officer's faulty notice rendered the search involuntary and not the product of valid consent. 296 Kan. at 530.

Although *Edgar* is not directly on point, because there was no initial consent preceding the consent obtained following the faulty notice, the case does illustrate the appropriate breadth of the totality of circumstances analysis, such that the "whole picture" should be considered when determining whether the blood draw was obtained with valid consent. 296 Kan. at 521-25. As such, the State's argument for a narrow totality analysis that would ignore the second consent is not persuasive. Immediately before his blood was drawn, Estrada consented to the seizure after being incorrectly advised that he had no right to refuse the seizure, he had no right to speak to an attorney, and he faced suspension of his license if he did refuse. Each of these statements Deputy Ohler made were erroneous, as they were only applicable under the implied consent law that all parties acknowledged had not been triggered. Therefore, each of these statements constitutes faulty notice, like the notice given in *Edgar*. 296 Kan. at 516, 530. Although Edgar consented at the scene of the accident, and this consent likely would have been valid in the absence of any intervening circumstances, we cannot ignore evidence under an appropriately broad totality of the circumstances analysis. Immediately prior to the blood draw, Estrada received unlawful warnings from Deputy Ohler that incorrectly threatened his license if he tried to refuse or withdraw consent and denied him the ability speak to counsel before submitting to a warrantless seizure. As in *Edgar*, such faulty notices are coercive and render the seizure involuntary. *Schneckloth*, 412 U.S. at 228-29; *Edgar*, 296 Kan. at 530.

In conclusion, we must reject the State's argument for a constrained totality of the circumstances analysis, and we affirm the district court's order excluding the blood test evidence.

We now consider if the officer's reasonable objective belief that he had valid consent precluded suppression of the evidence.

The State argues that Deputy Ohler reasonably believed the implied consent statute required him to read the consent form to Estrada, because such action had been ingrained into him for years and because the incident occurred before the Kansas Supreme Court denied review of *DeClerck*. K.S.A. 2013 Supp. 8-1001(b)(2) was still good law. No law precludes an officer from reading the notices under K.S.A. 2013 Supp. 8-1001(a) and (k) even in situations where K.S.A. 2013 Supp. 8-1001(b) does not apply, rendering his reading of the implied consent form no more than a reasonable mistake of law that did not warrant suppression. Additionally, the State contends Deputy Ohler acted as any reasonable officer would have and he had an objectively reasonable belief that he had obtained valid consent from Estrada, indicating that suppression would not have any deterrent effect.

Estrada responds that the State never argued below that Deputy Ohler reasonably relied on K.S.A. 2013 Supp. 8-1001(a) and (k), and the State has not argued that any exceptional circumstances apply that would warrant our consideration of this argument for the first time on appeal. Accordingly, Estrada contends that the State has waived any such argument.

The State replies that although its argument regarding K.S.A. 2013 Supp. 8-1001(a) and (k) was not raised before the district court, it was not a new argument but a refinement of its argument that suppression was not required under *Heien v. North*

13

*Carolina*, 514 U.S. ___, 135 S. Ct. 530, 190 L. Ed. 2d 475 (2014), given the officer's reasonable belief that K.S.A. 8-1001(a) and (k) applied.

The State also asserts that Estrada's argument that no reasonable officer could have reasonably believed that K.S.A. 2013 Supp. 8-1001 applied contradicts this court's holding in *State v. Quinn*, No. 112,051, 2015 WL 2343221 (Kan. App. 2015) (unpublished opinion), wherein the court found that all consent obtained for warrantless searches is obtained under K.S.A. 2014 Supp. 8-1001. Finally, the State argues that suppression is not warranted given the absence of bad faith and the lack of any likely deterrent effect.

There is a good faith exception to the exclusionary rule when law enforcement reasonably relies, in objective good faith, on a statute later declared unconstitutional, and the application of this exception is a question of law subject to unlimited review. *State v. Daniel*, 291 Kan. 490, 500, 242 P.3d 1186 (2010); *State v. Althaus*, 49 Kan. App. 2d 210, 219-21, 305 P.3d 716 (2013). Application of the good faith exception depends on whether an officer could have relied on the statute with objective good faith, not on whether the officer actually relied on the statute. *State v. Pettay*, 299 Kan. 763, 769, 326 P.3d 1039 (2014). The Fourth Amendment does not invalidate warrantless searches based on a reasonable mistake of fact, as distinguished from a mistake of law, which includes whether the facts indicate that valid consent exists. *State v. Porting*, 281 Kan. 320, 328, 130 P.3d 1173 (2006) (discussing the distinction between mistake of fact and mistake of law with regard to apparent authority and third party consent); but see *Heien*, 135 S. Ct. at 536-40 (holding that reasonable mistakes of law do not necessarily require suppression under the Fourth Amendment). This court has applied the good faith exception when a blood draw was taken in reliance on the implied consent provisions of K.S.A. 8-1001(b)(2) and the law enforcement officer fully complied with the statute. *State v. Meitler*, 51 Kan. App. 2d 308, 315, 347 P.3d 670, *rev. denied*, 302 Kan. ___ (June 29, 2015.

14

The State's argument is flawed in several respects. First, Deputy Ohler only testified that he believed he was supposed to read the implied consent form any time blood was drawn, not that he was required to do so because of the portion of the implied consent law at issue in *DeClerck*. Deputy Ohler did not testify that he had reasonable suspicion that Estrada was under the influence of drugs or alcohol when operating his car or that he could have been cited for a traffic offense, and thus the required triggering events for the application of the implied consent provisions of K.S.A. 2013 Supp. 8-1001(b) were absent and could not be relied on in objective good faith by an officer in Deputy Ohler's position to justify reading the rights restriction notices from K.S.A. 2013 Supp. 8-1001(k). See *Pettay*, 299 Kan. at 769. This case is easily distinguishable from *Meitler*, because the law enforcement officers in that case conformed with the requirements of K.S.A. 2011 Supp. 8-1001(b)(2) when relying on it to order blood drawn from an unconscious driver, ensuring, prior to ordering the blood draw, that the driver was involved in a car accident with serious injuries and that Meitler could be cited for a traffic violation. 51 Kan. App. 2d at 314-15. Deputy Ohler clearly testified that Estrada showed no signs of impairment, and he never described the actions of the drivers leading up to the accident or indicated that Estrada could be cited at the time for a traffic offense. There was no objectively reasonable basis for an officer to rely on implied consent when asking Estrada for a blood draw.

Second, Deputy Ohler's mistake in this case had nothing to do with whether he or any officer could reasonably believe that the implied consent law was still valid in the time between this court's decision in *DeClerck* and the mandate issue date. Rather, Ohler mistakenly advised Estrada that he could not speak to an attorney and he could not refuse to consent to the blood draw without licensing consequences, among other matters, believing that he was supposed to provide such notices even when K.S.A. 2013 Supp. 8-1001 did not require it. The implied consent law requires an officer to provide the notices that Deputy Ohler gave to Estrada "[b]efore a test or tests are administered under [K.S.A.

15

8-1001]," not before any blood draw following an automobile accident regardless of the circumstances. K.S.A. 2013 Supp. 8-1001(k). Although the State argues that an officer could reasonably believe that the K.S.A. 2013 Supp. 8-1001(k) notices should be read any time consent is used as an exception to the warrant requirement, regardless of whether implied consent is triggered, this argument is based on a misreading of *Quinn*, a recent unpublished, nonbinding decision in which this court held that the State could not argue that an unlawful blood draw, ordered under the implied consent law despite the lack of reasonable belief that the driver was intoxicated, could not be justified by consent secured in erroneous reliance on K.S.A. 2013 Supp. 8-1001(b). 2015 WL 2343221 *4. Outside the application of K.S.A. 2013 Supp. 8-1001, Estrada's Fourth Amendment right to be free from being subjected to a warrantless search and seizure was not curtailed, and Deputy Ohler's unreasonable mistake infringed this right.

Deputy Ohler's unreasonable, though innocent, mistake undermines the State's third argument, because suppressing the evidence here would deter officers from improperly advising citizens regarding their rights to refuse consent and speak to an attorney prior to subjecting them to warrantless searches and seizures. See *State v. Powell*, 299 Kan. 690, 694-95, 325 P.3d 1162 (2014) ("When evidence is illegally obtained, its suppression may be warranted under the exclusionary rule, which is a judicially created rule that safeguards against unconstitutional searches and seizures by suppressing illegally seized evidence as a deterrent to future violations."). The district court did not err in ruling that the blood test results were inadmissible based on invalid consent. The State has not demonstrated that any reasonable belief or good faith reliance exception should have prevented the district court from suppressing the blood test results that were obtained with invalid consent. As such, we affirm the district court's ruling.

Affirmed.

16