NOT DESIGNATED FOR PUBLICATION

No. 115,666

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

RAMON IRAN FEWELL,
*Appellant.*


MEMORANDUM OPINION


Appeal from Riley District Court; DAVID L. STUTZMAN, judge. Opinion filed August 4, 2017. Affirmed.


*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.


*James W. Garrison*, assistant county attorney, *Barry Wilkerson,* county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before LEBEN, P.J., GARDNER, J., and WALKER, S.J.


LEBEN, J.: Ramon Iran Fewell appeals his convictions on cocaine-distribution charges because one witness testified at trial that he had "bumped into" Fewell once in prison. Fewell argues that he was entitled to a mistrial because this testimony unfairly prejudiced the jury against him. But a mistrial is required only when the defendant's substantial rights have been affected. Here, the witness' statement was isolated and unsolicited, and the district court offered to tell the jury to disregard it. So the district court didn't abuse its discretion when it denied Fewell's motion for a mistrial.

Fewell also challenges the initial police decision to pull him over while he was driving—he argues that police didn't have facts that supported the required "reasonable suspicion" that he had committed or was committing a crime. But the police knew that Fewell regularly drove the black Jeep Patriot he was pulled over in; they had a reliable tip that Fewell was with a known drug dealer that night and that Fewell and the dealer had a large amount of cocaine with them; plus they knew that Fewell had previously sold cocaine to a police informant three times. The district court correctly determined the car stop was proper. We therefore affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On three different dates in early December 2014, Fewell sold small amounts of crack cocaine (less than 3.5 grams each time) to Melvin Kirk at Kirk's request. Unbeknownst to Fewell, Kirk was working as an informant for the police, hoping for leniency in his own criminal case, so the police watched and recorded each of these three drug deals.

Given that surveillance, it's no surprise that the details of these deals aren't disputed: Each one took place primarily in a Dillon's parking lot in west Manhattan. Each time, Fewell arrived in a black Jeep Patriot. Each time, Fewell took Kirk's money, went elsewhere to get the drugs, and then gave the drugs to Kirk.

Fewell admitted at trial that he had provided Kirk with cocaine on these three occasions. He testified, though, that he had only done so because he felt he had no choice. Fewell said that he owed Kirk some money and that he was afraid that Kirk would kill him if he didn't get him the cocaine because Kirk had a reputation for violence.

The following month, police planned a fourth and separate drug deal with Kirk. Everyone agrees that Fewell wasn't the dealer this time—the goal was for Kirk to buy a

larger amount of cocaine from the man police thought was supplying the drugs to Fewell, Mouhamadou Wilane. Fewell testified that he had been relieved when Kirk arranged a deal directly with Wilane because he "was trying to get out from between them the whole time"; Fewell didn't want to be the middleman anymore.

While setting up this new drug deal, Kirk called Fewell to ask where he could find Wilane; Fewell said he didn't know. Eventually Kirk contacted Wilane and asked to buy about 7 grams of crack cocaine. Kirk and Wilane then met in Fewell's driveway around 5:30 p.m. Fewell wasn't there, and Wilane was in a Chevy Trailblazer. Kirk gave Wilane the money, and Wilane said he would return later with the cocaine and then drove away. Around 8:30 or 9 p.m., Kirk and the officers concluded that Wilane was going to keep the money and not return with the cocaine. Around the same time, another officer heard from a different informant that Wilane was with Fewell—and that they had a large amount of cocaine with them.

So the police began looking for both Wilane and Fewell. Officer Adam Peterson began watching Wilane's house around 10 p.m.; Wilane's silver Chevy Trailblazer was parked in the driveway. Around 11:30 p.m., Peterson saw a black Jeep Patriot, apparently the same one that Fewell had driven to the December drug deals, pull up to Wilane's house, stay for a minute or two, leave, and then come back a few minutes later, stay for another minute or two, and then drive away. Because of his location, the officer couldn't see who was in the Jeep. He also couldn't see whether anyone was getting in or out of the Jeep when it was stopped or whether anyone was entering or leaving Wilane's house. But he was in contact with an officer who knew that Fewell usually drove a black Jeep Patriot.

Fewell later confirmed these facts, testifying that around 8:30 or 9 p.m. he had taken his roommate's car, the black Jeep Patriot, to pick up Wilane, who needed a ride home. Everyone agrees that this Jeep wasn't registered to Fewell, even though the police

3

had regularly seen Fewell driving it. Fewell said he and Wilane arrived back at Wilane's house after 11 p.m., and both men noticed a police car parked nearby (that was Officer Peterson, watching Wilane's house). Wilane then asked Fewell to take him to get a soda. So Fewell and Wilane drove away from Wilane's house and returned a few minutes later. Wilane then got out, and Fewell drove away.

The second time the Jeep drove away, Peterson followed and eventually pulled the Jeep over. He found Fewell alone in the car and arrested him. A search of the Jeep found a plastic bag containing eight smaller bags of cocaine with a total package weight of 6.2 grams. Fewell maintained that the cocaine belonged to Wilane, who had left it in the Jeep.

Before trial, Fewell filed a motion asking the district court to suppress the evidence of the cocaine found in the Jeep, arguing that the officer didn't have a legal basis to pull him over and arrest him. After an evidentiary hearing, the district court denied the motion, finding that the police had had reasonable suspicion to stop the Jeep and probable cause to arrest Fewell.

At trial, after the State had introduced all its evidence, Fewell's lawyer asked for a mistrial, arguing that Fewell had been unfairly prejudiced by Kirk's testimony that he had once "bumped into" Fewell in prison. The district court denied the mistrial motion because the comment "was an unsolicited portion of the answer that . . . came quickly and went quickly." The court said that it had not been so significant as to taint the trial, but offered to give the jury an instruction to disregard that testimony if the defense wanted such an instruction. Fewell's attorney declined that offer.

The jury convicted Fewell of one count of possession with intent to distribute cocaine (based on the cocaine found in his car) and three counts of distributing cocaine

4

(based on the three December drug deals). The district court sentenced Fewell to 65 months in prison with 36 months of postrelease supervision.

Fewell then appealed to our court.

ANALYSIS

I. *The District Court Did Not Abuse Its Discretion When It Denied Fewell's Motion for a Mistrial.*

Fewell first argues that the district court should have granted his motion for a mistrial because the jury heard Kirk testify that he had "bumped into" Fewell once in prison, and this testimony unfairly prejudiced the jury against him and infringed his constitutional rights to be presumed innocent and to have a fair trial.

We review a district court's mistrial ruling for an abuse of discretion. *State v. Moyer*, 302 Kan. 892, 906, 360 P.3d 384 (2015); *State v. Ward*, 292 Kan. 541, 551, 256 P.3d 801 (2011). A district court abuses its discretion when its decision is based on an error of law or fact or is otherwise arbitrary or unreasonable. *Moyer*, 302 Kan. at 906. A decision is not so arbitrary or unreasonable as to be an abuse of discretion unless no reasonable person would agree with it. *Ward*, 302 Kan. at 550.

To consider whether the district court may have abused its discretion, we should consider the steps of analysis the Kansas Supreme Court recommends for the trial court's consideration of a mistrial motion. The district court may order a mistrial when, among other reasons, there has been prejudicial conduct that makes it impossible to proceed with the trial without injustice to the defendant. K.S.A. 22-3423(1)(c). The mistrial inquiry has two parts. First, was there prejudicial conduct that caused a fundamental failure in the proceeding? If so, is it impossible to continue the trial without injustice (or to mitigate the

5

injustice with a jury instruction)? *Moyer*, 302 Kan. at 906. This second question is essentially a harmless-error analysis—did the prejudicial error affect the substantial rights of the defendant, meaning is there a reasonable probability that the error affected the outcome of the trial in light of the entire record? *State v. Logsdon*, 304 Kan. 3, 39, 371 P.3d 836 (2016). And if the rights involved are constitutional, as they are here, then the party benefiting from the error—here, the State—must prove that it was harmless beyond a reasonable doubt, meaning there is no reasonable possibility that the error affected the outcome. 304 Kan. at 39; *Ward*, 292 Kan. at 569-70.

The district court assumed, without deciding the matter, that Kirk's testimony was prejudicial and a fundamental failure in the trial. We will make that same assumption. See *State v. Clay*, 300 Kan. 401, 415, 329 P.3d 484 (2014) (assuming similar statement was prejudicial and moving on to second step); *State v. Rinck*, 256 Kan. 848, 853, 888 P.2d 845 (1995) (same); see also *Ward*, 292 Kan. at 576 (summarizing and agreeing with caselaw that a defendant or witness wearing prison clothing at trial was prejudicial). Kirk responded to a question from Fewell's lawyer about how he knew Fewell: "Well, I've known of him all of his life but not particularly know him. *I bumped into him in prison once* and just around town." (Emphasis added.) This statement could have impacted Fewell's constitutional rights to be presumed innocent and to have a fair trial because the jury could have inferred that Fewell was guilty in this case because he'd been in prison before, rather than on the evidence.

But any prejudice from Kirk's statement was minimal and did not make it impossible to proceed with the trial without injustice to Fewell—there is no reasonable possibility that the error affected the outcome. See *Logsdon*, 304 Kan. at 39; *Ward*, 292 Kan. at 569-70. Kirk only briefly mentioned that he had once run into Fewell in prison, in the midst of answering a question from Fewell's lawyer about how he knew Fewell. That Fewell had been in prison before wasn't mentioned again in front of the jury by any party, lawyer, or witness. The district court offered to provide a curative jury instruction (telling

6

the jury to ignore the comment), but Fewell's lawyer declined the offer because he thought that it would draw extra attention to the statement. Furthermore, Kirk's statement wasn't solicited in any way; it was simply an extraneous portion of an answer to a reasonable question about how Kirk knew Fewell. The Kansas Supreme Court has twice found no abuse of discretion in the denial of mistrial motions in similar situations. See *Clay*, 300 Kan. at 415 (finding no abuse of discretion in denial of motion for mistrial after witness' statement that he knew defendant from prison because statement was isolated and defense rejected offer for curative instruction); *Rinck*, 256 Kan. at 853-54 (finding no abuse of discretion in denial of motion for mistrial after witness' remark that defendant had been in prison because testimony was unsolicited, court offered curative instruction, and statement was isolated). The district court didn't abuse its discretion when it denied Fewell's mistrial motion in this case, either.

II. *The District Court Did Not Err When It Denied Fewell's Motion to Suppress Evidence Recovered After Stopping Fewell While He Was Driving.*

Fewell also argues that the district court should have suppressed the evidence of the cocaine the police found in his car because the police didn't have reasonable suspicion to stop his car.

When reviewing the denial of a motion to suppress evidence, we use a two-part standard of review. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016). First, without reweighing the evidence or reassessing witness credibility, we ask whether the district court's factual findings are supported by substantial evidence. 304 Kan. at 274. Evidence is substantial when a reasonable person would accept it as sufficient to support a conclusion. *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015). Second, we review the ultimate legal conclusion independently, without any required deference to the district court's decision. *Patterson*, 304 Kan. at 274.

7

The Fourth Amendment to the United States Constitution and Section 15 of the Kansas Constitution Bill of Rights protect us from unreasonable searches and seizures. *State v. Williams*, 297 Kan. 370, 376, 300 P.3d 1072 (2013). Generally stated, a search or seizure is "unreasonable" if it's done without a warrant supported by probable cause, without an exception to the warrant requirement, or without reasonable suspicion, depending on the circumstances. See K.S.A. 22-2402; *Patterson*, 304 Kan. at 274-75. If police discover evidence because of an unreasonable and unconstitutional search or seizure, courts usually suppress that evidence, meaning that it can't be used at trial. This is known as the exclusionary rule, and courts use it to discourage police officers from unconstitutional behavior. *State v. Pettay*, 299 Kan. 763, 768-69, 326 P.3d 1039 (2014).

In this case, Fewell doesn't challenge his arrest or the actual search of his Jeep. Instead, he claims that Officer Peterson's initial stop of Fewell's car wasn't constitutional, so the evidence discovered as a result of that stop—the 6.2 grams of cocaine packaged for distribution—should have been suppressed and not admitted at trial.

Before stopping a car for investigative reasons or to arrest someone, the police must have specific and articulable facts that create reasonable suspicion that someone in the car is committing, has committed, or is about to commit a crime or traffic infraction. *State v. Chapman*, 305 Kan. 365, 370, 381 P.3d 458 (2016). When we examine whether reasonable suspicion existed, we do not examine one fact at a time but instead consider all the circumstances justifying the stop, using common sense and ordinary human experience and giving reasonable deference to police officers' ability to distinguish between innocent and suspicious actions. 305 Kan. at 371.

In this case, everyone agrees that the Jeep didn't commit any traffic infractions on January 6 that would justify the car stop. The police nonetheless had reasonable suspicion that Fewell and Wilane were in the Jeep and had cocaine. The police had reason to suspect that Wilane had cocaine, since Wilane had agreed to sell cocaine to their

8

informant Kirk, but had taken the money and not come back with the drugs. And the officers also had reason to believe that Wilane was with Fewell, even though Fewell wasn't involved in the drug deal that day: The police knew generally that Wilane and Fewell were associates, to the extent that Kirk called Fewell when he was looking for Wilane on January 6. And Wilane arranged to meet Kirk for this drug deal in Fewell's driveway.

More specifically, an officer received a tip during the evening of January 6—the night of Fewell's arrest—from another informant, that Fewell and Wilane were together and had cocaine. This tip lined up with the failed drug deal between Kirk and Wilane: Kirk had given Wilane $380 for cocaine, but Wilane never returned with the drugs, so it was likely that Wilane had used the money to buy cocaine and keep it for himself. The tip was also corroborated when the black Jeep Patriot, which Fewell regularly drove, arrived at Wilane's house, where Wilane's car was already parked. It's true that this Jeep wasn't registered in Fewell's name, but Fewell drove it to each of the three monitored drug deals in December, and an officer testified that he had regularly seen Fewell driving it at other times. So it was reasonable for police to conclude that the Jeep was Fewell's car, and the informant's tip that Fewell and Wilane were together was confirmed when the Jeep pulled up at Wilane's house. So while it's true that the police didn't actually see Fewell with Wilane at any point that night, they had reasonable suspicion that Fewell was driving the Jeep, that Wilane might be in the Jeep as well, and that either or both had committed or were committing a cocaine-related crime.

Fewell argues that the police knowledge that he drove this black Jeep Patriot was based on old information, from the drug deals in early December, so the police couldn't reasonably rely on it to infer that he was still driving it in early January. It's true that information does sometimes get stale and becomes too old to be relied upon; this concept is often discussed in cases involving whether probable cause supports a search warrant. See, e.g., *State v. Jacques*, 225 Kan. 38, 42, 587 P.2d 861 (1978) (lapse of time can

9

remove probable cause to search by destroying any reasonable belief that drugs remain on the premises). But the car that a person drives is a different type of information than whether drugs might be found at a certain location: Drugs are easy to transport, whereas people often drive the same car for months or years. Based on the police officers' many observations of Fewell driving the black Jeep Patriot, it wasn't unreasonable for them to assume that he was driving that Jeep on January 6. The district court correctly concluded that the police had reasonable suspicion to stop the Jeep. That's the only part of the sequence Fewell has challenged; since this initial car stop was reasonable and constitutional, the exclusionary rule didn't apply. Thus, the district court correctly denied the motion to suppress and admitted the evidence of the cocaine found in the Jeep.

We affirm the district court's judgment.