IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 112,449

STATE OF KANSAS,
*Appellee*,

v.

DUSTIN DEAN PERKINS,
*Appellant.*

SYLLABUS BY THE COURT

1.

Neither the Fourth Amendment to the United States Constitution nor § 15 of the Kansas Constitution Bill of Rights addresses the proper remedy for a warrantless search; the exclusionary rule is a judicially created remedy designed to deter unlawful searches and seizures by prohibiting the prosecution's use of unconstitutionally obtained evidence.

2.

Ordinarily, issues not raised before the trial court cannot be raised on appeal. There are three exceptions to this preservation rule: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is determinative; (2) consideration of the theory is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and (3) the trial court may be affirmed because it was right for the wrong reason.

3.

The good-faith exception to the exclusionary rule as discussed in *Illinois v. Krull,* 480 U.S. 340, 349-50, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987), applies when an officer reasonably relies upon a statute to make a search and the statute is later deemed

1

unconstitutional. Reliance upon a statute is not reasonable if the provisions of a statute are such that a reasonable officer should have known that the statute was unconstitutional.

4.

In this case, a law enforcement officer's reliance on K.S.A. 2012 Supp. 8-1025 was reasonable because the officer could not have reasonably been expected to have known that the statute would later be found unconstitutional and the officer followed the law as it existed at the time.

5.

The Legislature did not wholly abandon its duty to pass constitutional laws when it passed K.S.A. 2012 Supp. 8-1025; this court has held that the provisions of K.S.A. 2012 Supp. 8-1025 that criminalize withdrawal of consent to submit to a blood alcohol content test are unconstitutional, but the entire implied consent statutory scheme has not been invalidated.

Review of the judgment of the Court of Appeals in 55 Kan. App. 2d 372, 415 P.3d 460 (2018). Appeal from Ellis District Court; EDWARD E. BOUKER, judge. Opinion filed October 4, 2019. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Michael S. Holland II*, of Holland and Holland, of Russell, argued the cause and was on the briefs for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, argued the cause, and *Curtis Brown*, of Glassman, Bird, Brown & Powell, L.L.P., of Hays, and *Derek Schmidt*, attorney general, were with him on the briefs for appellee.

PER CURIAM:  Dustin Dean Perkins seeks review of the Court of Appeals decision to affirm his conviction for driving under the influence. Citing this court's holdings in

*State v. Ryce*, 303 Kan. 899, 368 P.3d 342 (2016) (*Ryce I*), and *State v. Nece*, 303 Kan. 888, 367 P.3d 1260 (2016) (*Nece I*), Perkins argues the results of the warrantless breath test conducted following his arrest should have been suppressed as an unconstitutional search.

The Court of Appeals rejected Perkins' argument and affirmed on two bases: (1) the search was not unconstitutional because it fit within the search incident to arrest exception to the Fourth Amendment's warrant requirement; and (2) the good-faith exception to the exclusionary rule permitted the State to convict Perkins with unconstitutionally obtained evidence. *State v. Perkins*, 55 Kan. App. 2d 372, 415 P.3d 460 (2018). On review of that decision, we affirm the Court of Appeals panel based on our holding that the good-faith exception to the exclusionary rule permits the State to use evidence obtained as a result of Perkins' breath test.

FACTUAL AND PROCEDURAL OVERVIEW

In July 2012, a Hays Police Department law enforcement officer (LEO) stopped the vehicle Perkins was driving for disobeying a red traffic signal and ultimately arrested him for driving under the influence (DUI). After the arrest, the LEO transported Perkins to the police station and provided him with written and oral implied consent advisories. Perkins agreed to submit to a breath test, and his breath sample registered a 0.158 percent blood alcohol content (BAC), which is above the legal limit. The State charged Perkins with misdemeanor DUI under K.S.A. 2012 Supp. 8-1567(a)(2), or in the alternative K.S.A. 2012 Supp. 8-1567(a)(3) and (b)(1)(B).

In the district court, Perkins filed a motion to suppress the results of the breath test and submitted the matter to the district court based upon a stipulation of facts and waiver of jury trial. The district court denied the motion to suppress in June 2014 and convicted Perkins of DUI. Perkins appealed.

Before the Court of Appeals considered Perkins' appeal, this court published its decisions in *Ryce I* and *Nece I*. Those decisions declared K.S.A. 8-1025's criminalization of a driver's refusal to submit to BAC testing to be unconstitutional under the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights. See *Nece I*, 303 Kan. 888, Syl. Consequently, a consent to submit to BAC testing after being advised that a refusal was a criminal act rendered the consent unduly coerced and invalid.

Subsequent to *Ryce I* and *Nece I*, the United States Supreme Court decided *Birchfield v. North Dakota*, 579 U.S. ___, 136 S. Ct. 2160, 195 L. Ed. 2d 560 (2016). That decision held that the Fourth Amendment prohibits warrantless blood tests pursuant to DUI arrests and that motorists cannot be deemed to have consented to such a test based on a threat of criminal penalty. 136 S. Ct. at 2186. But in contrast, the *Birchfield* Court also held that warrantless breath tests can be permissible under the Fourth Amendment. 136 S. Ct. at 2184.

Upon rehearing to consider the impact of *Birchfield*, this court reaffirmed the results reached in *Ryce I* and *Nece I*. *State v. Nece*, 306 Kan. 679, 396 P.3d 709 (2017) (*Nece II*); *State v. Ryce*, 306 Kan. 682, 396 P.3d 711 (2017) (*Ryce II*).

The Court of Appeals issued a show cause order in Perkins' case, directing the State to explain why the matter should not be summarily reversed per *Nece I* and *II*. The State responded, acknowledging that the consent in this case was rendered involuntary per *Nece I* but that other exceptions to the exclusionary rule should apply and the State should be given an opportunity to raise those exceptions because its initial briefing predated *Nece I*. The State specifically argued that the search incident to arrest exception to the warrant requirement and the good-faith exception to the exclusionary rule might apply.

4

The Court of Appeals then ordered supplemental briefing from both parties addressing the impact of *Nece I* and *II* and "whether any exceptions to the warrant requirement of the Fourth Amendment [to the United States Constitution] should be applied" to this case. *Perkins*, 55 Kan. App. 2d at 378.

After supplemental briefing from both parties, the Court of Appeals issued a published opinion in which it affirmed the district court, finding that: (1) the search incident to arrest exception to the warrant requirement allows a warrantless breath test; and (2) in this case, the good-faith exception would apply to save the evidence from the exclusionary rule because at the time of arrest the officer acted with an objectively reasonable reliance on a statute that was later determined to be unconstitutional. *Perkins*, 55 Kan. App. 2d at 380-83.

We granted Perkins' timely petition for review in which he argues that the Court of Appeals blatantly ignored this court's opinions in the *Nece* and *Ryce* decisions, that the State failed to preserve its search incident to arrest theory, that the State's good-faith exception theory was implicitly rejected in our *Nece II* decision and is inapplicable because the officer was not relying on an unconstitutional statute as authority to conduct the search, and that the Legislature abandoned its duty to pass constitutional laws.

ANALYSIS

The Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights prohibit unreasonable searches. A warrantless search is per se unreasonable unless a valid exception to the Fourth Amendment applies. *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009); *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014). Neither the Fourth Amendment nor § 15 of the Kansas Constitution Bill of Rights addresses the proper remedy for a warrantless search;

5

the exclusionary rule is a judicially created remedy designed to deter unlawful searches and seizures by prohibiting the prosecution's use of unconstitutionally obtained evidence. *Illinois v. Krull*, 480 U.S. 340, 347, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987); *State v. Daniel*, 291 Kan. 490, 496, 242 P.3d 1186 (2010).

Before the district court, the State argued Perkins had consented to the search. The district court found the consent was voluntary and within the consent exception to the warrant requirement. The district court thus did not discuss a remedy. On appeal, the State pivoted to asserting two new reasons the invalid consensual search of Perkins' deep lung air was nevertheless admissible as evidence against him in the DUI prosecution. In one argument, the State argued the officer could have relied on another exception to the warrant requirement—the search incident to arrest exception. In the second argument, the State focused on the remedy that applies if the search is unreasonable—that is, whether the evidence is admissible because the officer relied in good faith on a statute. The panel acknowledged that the State did not present either issue to the trial court and, "[o]rdinarily, issues not raised before the trial court cannot be raised on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014)." *Perkins,* 55 Kan. App. 2d at 378.

The panel then noted that "there are several exceptions to this [preservation] rule" and recited the three exceptions this court has recognized:  (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is determinative; (2) consideration of the theory is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and (3) the trial court may be affirmed because it was right for the wrong reason. 55 Kan. App. 2d at 378 (citing *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 [2014]).

The panel also cited to the parties' stipulated facts, holding that because the facts were undisputed the two new theories presented only questions of law. As such, the panel concluded the first preservation exception applied and declared that, therefore, it

6

could consider the new theories for the first time on appeal. 55 Kan. App. 2d at 378, 381 (citing *State v. Cleverly*, 305 Kan. 598, 604, 385 P.3d 512 [2016]; *Daniel*, 291 Kan. at 496). The panel did not clarify whether it selected the first preservation exception before or after it ordered supplemental briefing in which the State argued the applicability of all three preservation exceptions. Cf. *State v. Williams*, 298 Kan. 1075, 1085-86, 319 P.3d 528 (2014) (warning litigants to explain why an issue is properly before the court or risk having the issue deemed abandoned).

This case, however, differs significantly from the normal situation on appeal. Here, it was the Court of Appeals that requested the State to brief new arguments on appeal, akin to the panel raising the issue sua sponte. When an appellate court raises an issue, the parties should be afforded an opportunity to present their positions to the court. See *Lumry v. State,* 305 Kan. 545, 566, 385 P.3d 479 (2016) (citing *State v. Puckett*, 230 Kan. 596, 640 P.2d 1198 [1982]).

*Lumry* concerned a dispute over wage and hour laws and retaliatory discharge; a Court of Appeals panel sua sponte raised an issue regarding adequate alternative remedies under the Fair Labor Standards Act and then did not address the issue, but "arbitrarily invoked the waiver rule." 305 Kan. at 566. This court said the failure to afford the parties a chance to argue the issue was error. 305 Kan. at 566. Conversely, the *Perkins* panel followed the procedure we suggested in *Lumry* and gave the parties the chance to address the newly raised issues.

We agree that this preservation exception applies, allowing us to consider the State's arguments. This appeal differs in this regard with the situation we faced in *Nece*. There, we declined to consider the good-faith exception because the State did not present any argument to us on that point, despite the suggestion from the Court of Appeals that the exception may be applicable. *Nece I*, 303 Kan. at 897. The State did not make that omission here. Because of this distinction, we disagree with Perkins' argument that this

7

court foreclosed the applicability of the good-faith exception in *Nece I*. We simply did not reach that issue because the State failed to preserve it. Here, without a preservation impediment, we can analyze whether the good-faith exception to the exclusionary rule would operate to save the evidence obtained from the testing of Perkins' breath, even if it was unconstitutionally obtained through an impermissible search. *Perkins*, 55 Kan. App. 2d at 381.

The good-faith exception to the exclusionary rule was first recognized by the United States Supreme Court in *United States v. Leon*, 468 U.S. 897, 920-21, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). There, the Court found that if exclusion of unconstitutionally obtained evidence would not have a deterrent effect, the evidence should not be excluded, and if law enforcement obtains evidence in reliance on a warrant that is later determined to be invalid, the evidence should not be excluded.

Later, the United States Supreme Court extended the *Leon* good-faith exception to the exclusionary rule to include reasonable reliance upon a statute, even if the statute is later found to be unconstitutional. *Krull*, 480 U.S. at 349-50; *Daniel*, 291 Kan. at 500.

*Daniel* is analogous to the present case:  police arrested Candy S. Daniel and searched her car pursuant to K.S.A. 22-2501(c), which, at the time, allowed a search of a vehicle pursuant to an arrest. 291 Kan. at 491. Later, after Daniel appealed her conviction, K.S.A. 22-2501(c) was found to be unconstitutional under *Gant*, 556 U.S. at 344. *Daniel*, 291 Kan. at 491-92 (citing *State v. Henning*, 289 Kan. 136, 148-49, 209 P.3d 711 [2009]).

This court adopted *Krull*'s expansion of the *Leon* good-faith exception to excuse a police officer's reasonable reliance on a statute. *Daniel*, 291 Kan. at 499-500. In *Krull*, the Supreme Court said that reliance on a statute would not be reasonable if "its provisions are such that a reasonable officer should have known that the statute was

8

unconstitutional." 480 U.S. at 355. In *Daniel*, the court found the officer's reliance on K.S.A. 22-2501(c) was reasonable because of pre-*Gant* caselaw which supported such searches and affirmed the district court's denial of the motion to suppress. 291 Kan. at 505; see also *State v. Dennis*, 297 Kan. 229, 230, 300 P.3d 81 (2013) (officer need not specifically articulate statute authorizing search if an objectively reasonable officer could rely upon a statute).

Similarly, here, there was no reason for the officer to know that K.S.A. 2012 Supp. 8-1025 would later be found unconstitutional or that the implied consent advisory based on that law was coercive. The LEO followed the law as it existed at that time and could not reasonably be expected to know that the statute later would be found unconstitutional. Nor did the Legislature wholly abandon its duty to pass constitutional laws, as argued by Perkins. We have held that the provisions in K.S.A. 8-1025 which criminalized test refusal were unconstitutional, but we have not invalidated the entire implied consent statutory scheme. Perkins' arguments to this effect are unavailing, and we find that the good-faith exception to the exclusionary rule would save the evidence in this case even though Perkins' consent to search was invalid.

Because we reach this holding, we need not discuss the State's alternative argument about the search incident to arrest exception. In sum, the holding of the Court of Appeals affirming the district court's refusal to suppress the result of the breath test is affirmed.

Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

NUSS, C.J., and JOHNSON, J., not participating.

MICHAEL J. MALONE, Senior Judge, assigned.[1]

\* \* \*

LUCKERT, J., concurring:  I agree with the majority's decision to apply the good-faith exception as it is recognized by the United States Supreme Court in cases decided under the Fourth Amendment to the United States Constitution. And I concur with the majority's implicit application of the United States Supreme Court's caselaw to § 15 of the Kansas Constitution Bill of Rights. I do so even though I question whether Kansas should continue to apply the good-faith exception in lockstep with federal caselaw. Instead, I am open to reexamining our decision in *State v. Daniel*, 291 Kan. 490, 242 P.3d 1186 (2010), which adopted the holdings in *Illinois v. Krull*, 480 U.S. 340, 349-50, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987).

I decline to conduct that reexamination here, however, because Dustin Dean Perkins has not asked us to overrule *Daniel* and has not argued that the result under the Kansas Constitution should differ from that reached by application of United States Supreme Court caselaw. But in a future case, I am willing to revisit our holding in *Daniel* because the passage of time and the evolution of federal caselaw reveals that, as predicted by Justice Johnson in his dissent in *Daniel*, the *Krull* exception has greatly weakened the exclusionary rule. See *Daniel*, 291 Kan. at 505-09 (Johnson, J., dissenting); see also *State*

---

[1]**REPORTER'S NOTE:**  Senior Judge Malone was appointed to hear case No. 112,449 vice Justice Nuss under the authority vested in the Supreme Court by K.S.A. 20-2616. Justice Lee A. Johnson retired on September 6, 2019, and did not participate in the decision of No. 112,449.

10

*v. Jordan*, 303 Kan. 1017, 1022, 370 P.3d 417 (2016) (Johnson, J., dissenting) ("[T]he doctrine of stare decisis was never designed to perpetuate law that was originally erroneous.").

As the majority notes, in *Daniel*, 291 Kan. 499-500, this court followed the United States Supreme Court's decision in *Krull*, 480 U.S. at 349-50, which expanded the *United States v. Leon*, 468 U.S. 897, 922-23, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), good-faith exception to the exclusionary rule. Slip op. at 8. *Leon* held evidence could be admitted even if an unconstitutional search occurred as long as the law enforcement officers conducting the search relied in good faith on the fact a neutral magistrate had signed a search warrant. *Leon*, 468 U.S. at 922, 926. *Krull* then extended the exception to situations where officers conduct an unconstitutional search in good-faith reliance on a statute. *Krull*, 480 U.S. at 349-50. When we adopted *Krull*, we noted that our court has typically interpreted the protections of the Kansas Constitution as being coextensive with the United States Constitution. *Daniel*, 291 Kan. at 498 (citing *State v. Hoeck*, 284 Kan. 441, 463, 163 P.3d 252 [2007], and *State v. Schultz*, 252 Kan. 819, 824, 850 P.2d 818 [1993]). But, as Justice Johnson pointed out in his *Daniel* dissent, simply because our caselaw has, thus far, interpreted § 15 as affording no greater protections than the Fourth Amendment does not mean that this court is compelled to always do so. 291 Kan. at 506 (Johnson, J., dissenting). And legitimate arguments can be made that we should independently determine the remedies Kansas should impose when law enforcement officers violate the Kansas Constitution.

Primarily, passage of time has shown how the *Krull* exception appears to have swallowed the exclusionary rule. The "linchpin" of the exclusionary rule "is its deterrent effect upon law enforcement." 291 Kan. 490, Syl. ¶ 4. But the caselaw since *Krull* has validated Justice Johnson's point that the expansion of the good-faith exception to allow an arresting law enforcement officer to interpret and apply statutory law puts the fox in charge of the henhouse. See *Daniel*, 291 Kan. at 507 (Johnson, J., dissenting) ("[T]he

11

majority would permit a law enforcement officer to perform the judicial function of interpreting a statute and applying the statutory provisions to the facts as they are being encountered by the officer.").

Further, our Court of Appeals has noted that "in the 28 years since *Krull* was issued, there does not appear to be any reported cases wherein a federal or state appellate court declined to apply the good-faith exception because a legislative body wholly abandoned its responsibility to enact constitutional laws." *State v. Meitler*, 51 Kan. App. 2d 308, 317, 347 P.3d 670 (2015). This conclusion causes me to question: How does the exclusionary rule deter unconstitutional conduct, including legislative action in adopting unconstitutional statutes, if a court fails to provide a remedy simply because a law enforcement officer can claim reliance on a statute?

I recognize that in *Krull*, 480 U.S. at 352-53, the United States Supreme Court determined, "to the extent that application of the exclusionary rule could provide some incremental deterrent, that possible benefit must be weighed against [its] 'substantial social costs.'" The United States Supreme Court has thus held the exclusionary rule should be applied only as a "last resort." See *Hudson v. Michigan*, 547 U.S. 586, 591, 596, 126 S. Ct. 2159, 165 L. Ed. 2d 56 (2006). As a result, applying the United States Constitution, the United States Supreme Court has limited the application of the exclusionary rule to the following rare situation:

> "When the police exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs. But when the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful, or when their conduct involves only simple, 'isolated' negligence, the "'deterrence rationale loses much of its force,'" and exclusion cannot 'pay its way.' [Citations omitted.]" *Davis v. United States*, 564 U.S. 229, 238, 131 S. Ct. 2419, 180 L. Ed. 2d 285 (2011).

12

But I question the notion that the *only* purpose of the exclusionary rule is to deter police misconduct. It also functions to preserve the integrity of the judicial system; to prevent the government from profiting from the fruits of lawless behavior, whether intentional or inadvertent; and to preserve the rights of citizens guaranteed by our founding fathers in the Bill of Rights. Cf. *State v. Pettay*, 299 Kan. 763, 772-73, 326 P.3d 1039 (2014) (Johnson, J., concurring) (discussing other purposes served by the exclusionary rule). In *Webb*, Justice Johnson quoted Thomas Jefferson, to-wit: "'[A] bill of rights is what the people are entitled to against every government on earth, general or particular, and what no just government should refuse.' *United States v. Emerson*, 270 F.3d 203, 266 (5th Cir. 2001) (citing 'The Origin of the Second Amendment' [2d ed. 1995] [Golden Oaks Books])." *City of Dodge City v. Webb*, 305 Kan. 351, 358-59, 381 P.3d 464 (2016) (Johnson, J., dissenting).

In my view, the application of *Krull* by federal and state courts warrants our reconsideration of whether its exception leaves Kansans without the protection guaranteed by § 15 of the Kansas Constitution Bill of Rights.

13