NOT DESIGNATED FOR PUBLICATION

No. 120,714

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL RAYMOND NIEDER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; ROBERT J. BEDNAR, judge. Opinion filed March 6, 2020. Affirmed.

*James E. Rumsey*, of Lawrence, for appellant.

*Michael G. Jones*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., LEBEN and BRUNS, JJ.

PER CURIAM: Michael Raymond Nieder was convicted on stipulated facts of driving under the influence and for a related traffic offense. On appeal, Nieder challenges his conviction for driving under the influence. He contends that the district court erred by applying the good-faith exception to admit his breath alcohol test results into evidence. In addition, Nieder contends that two standard field sobriety tests were improperly admitted into evidence. Finally, Nieder contends that the district court's delay in ruling on his motion to suppress resulted in an unequal protection of law in violation of the Fourteenth Amendment. Finding no error, we affirm Nieder's convictions.

1

On August 12, 2015, Kansas Highway Patrol Trooper Shawn Phillips observed Nieder driving erratically on the Kansas Turnpike in Leavenworth County. Trooper Phillips stopped Nieder and, upon approaching the vehicle, noticed a strong alcohol odor coming from inside. After explaining the reason for the stop, Trooper Phillips asked Nieder to perform standard field sobriety tests.

According to Trooper Phillips, Nieder displayed five of the seven indications of impairment on the walk-and-turn test. He also displayed three of four indications of impairment on the one-leg-stand test. Following the administration of the field sobriety tests, Trooper Phillips requested that Nieder take a preliminary breath test. However, Nieder refused and Trooper Phillips placed him under arrest.

It is undisputed that Trooper Phillips gave Nieder a written copy of the implied consent advisory, Form DC-70, and also read it aloud to him. The implied consent advisory given to Nieder reads, in part, as follows:

> "4. If you refuse to submit to and complete any test of breath, blood or urine hereinafter requested by a law enforcement officer, you may be charged with a separate crime of refusing to submit to a test to determine the presence of alcohol or drugs, which carries criminal penalties that are greater than or equal to the criminal penalties for the crime of driving under the influence if you have a prior refusal for an evidentiary test for alcohol or drugs or a prior conviction or diversion for DUI or driving a commercial motor vehicle with an alcohol content of .04 or more, and such prior refusal or conviction occurred on or after July 1, 2001, and when you were 18 years of age or older."

Ultimately, Nieder submitted to a breath alcohol test, which revealed that Nieder's blood alcohol content was 0.136 grams of alcohol per 210 liters of breath. As a result, the State charged Nieder with driving under the influence and failure to maintain a single lane.

On March 21, 2016, Nieder filed a motion to suppress evidence relating to the driving under the influence charge as well as a motion in limine regarding the admissibility of the results of the Horizontal Gaze Nystagmus (HGN) test and other field sobriety testing. On December 26, 2017, the district court denied the motion to suppress, and on March 6, 2018, the district court denied a motion for reconsideration. Likewise, on March 27, 2018, the district court granted the motion in limine regarding the HGN test, and denied the motion in limine regarding the other field sobriety tests. Finally, on June 20, 2018, the district court entered an order allowing Trooper Phillips to testify regarding the results of the admissible field sobriety tests.

After the district court ruled on the pretrial motions, the parties submitted a written stipulation as to the facts. On November 14, 2018, the district court convicted Nieder on both counts. Subsequently, the district court sentenced Nieder to six months in jail. Even so, the district court suspended all but 48 hours of the sentence and ordered that Nieder serve 12 months of probation. Thereafter, Nieder timely appealed.

ANALYSIS

On appeal, Nieder raises three issues relating to his conviction for driving under the influence. First, he contends that the district court erred by applying the good-faith exception to allow his breath alcohol test into evidence. Second, he contends that the district court erred by allowing Trooper Phillips to testify about the results of the field sobriety tests. Third, he contends that the district court denied him equal protection of law by the delay in ruling on his motion to suppress.

3

*Good-Faith Exception*

Following Nieder's arrest, the Kansas Supreme Court found the criminal refusal statute—upon which the implied consent advisory form given in this case was based—to be unconstitutional. *State v. Ryce*, 303 Kan. 899, Syl. ¶¶ 7, 12, 368 P.3d 342 (2016) (*Ryce I*) ("Fourth Amendment principles recognize that consent implied through K.S.A. 2014 Supp. 8-1001 can be withdrawn."); see also *State v. Ryce*, 306 Kan. 682, 683, 396 P.3d 711 (2017) (*Ryce II*). As a result, Nieder sought to suppress the results of the breath alcohol test that Trooper Phillips administered to him while he was in custody. However, the district court ultimately found that the results were admissible under the good-faith exception. We agree with the district court.

In ruling on the motion to suppress, the district court found:

"[Trooper Phillips] used the form that was given to him for use because it was the law at the time. He had no authority to modify or change the form. The officer had never been informed that there was any problem with the implied consent form."

Generally, when law enforcement officers obtain evidence in violation of a person's Fourth Amendment rights, the evidence will not be admitted at trial in order to deter law enforcement officers from violating a defendant's constitutional rights. *State v. Pettay*, 299 Kan. 763, 768-69, 326 P.3d 1039 (2014). Nevertheless, the good-faith exception is often applied when an officer reasonably relies on a statute that is later found to be unconstitutional. The good-faith exception—which has been recognized by both the United States Supreme Court and the Kansas Supreme Court—applies when a law enforcement officer reasonably relies on a statute that is later found to be unconstitutional. See *Davis v. United States*, 564 U.S. 229, 240, 131 S. Ct. 2419, 180 L. Ed. 2d 285 (2011) ("[W]e have 'never applied' the exclusionary rule to suppress evidence obtained as a result of nonculpable, innocent police conduct."); *Illinois v. Krull*, 480 U.S. 340, 349-50, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987) ("The application of the

4

exclusionary rule to suppress evidence obtained by an officer acting in objectively reasonable reliance on a statute would have . . . little deterrent effect on the officer's actions . . . ."); *State v. Carlton*, 297 Kan. 642, 646, 304 P.3d 323 (2013) ("Exclusion is not a personal constitutional right; rather, its purpose is to deter violations by the State."); *State v. Perkins*, 55 Kan. App. 2d 372, 382, 415 P.3d 460 (2018) ("In such cases, suppression of the seized evidence does not serve the purpose of the rule. After all, the officer was obeying the law at the time of the search."), *aff'd* 310 Kan. 764, 449 P.3d 756 (2019).

Whether the good-faith exception applies in a particular case is a question of law and is reviewed on appeal without deference to the district court. See *State v. Karson*, 297 Kan. 634, 639, 304 P.3d 317 (2013). Under the good-faith exception, a law enforcement officer may rely on a statute if a reasonable officer would not have known that it was unconstitutional. *State v. Daniel*, 291 Kan. 490, Syl. ¶ 8, 242 P.3d 1186 (2010). In other words, suppression of evidence does not serve the purpose of the exclusionary rule where an officer is obeying the law at the time of the search.

At the time Trooper Phillips arrested Nieder on August 12, 2015, K.S.A. 2015 Supp. 8-1001(k)(4) required law enforcement officers to advise those under investigation for driving under the influence of the criminal consequences of refusing to submit to the breath alcohol test. This included advising those under investigation of the potential punishment under K.S.A. 2015 Supp. 8-1025 for refusing or withdrawing his or her consent to submitting to a breath alcohol test. It is important to note that providing the implied consent advisory to those under investigation was mandatory—not optional. See K.S.A. 2015 Supp. 8-1025; K.S.A. 2015 Supp. 8-1001. Moreover, Trooper Phillips testified that he was unaware that the advisory was unconstitutional at the time of Nieder's arrest.

It was not until February 26, 2016, that the Kansas Supreme Court decided *Ryce I*. After our Supreme Court issued its decision in *Ryce I*, the mandate was stayed until the United States Supreme Court issued a decision in three consolidated cases addressing similar issues. Once the United States Supreme Court issued its opinion in *Birchfield v. North Dakota*, 579 U.S. ___, 136 S. Ct. 2160, 195 L. Ed. 2d 560 (2016), our Supreme Court allowed the parties in *Ryce I* to submit supplemental briefs and to make additional oral arguments. Finally, on June 30, 2017, our Supreme Court issued its opinion in *Ryce II* in which the majority determined that K.S.A. 2016 Supp. 8-1025 was unconstitutional.

We can find nothing in the record on appeal to suggest that Trooper Phillips either knew or should have known that K.S.A. 2015 Supp. 8-1025 was unconstitutional. In fact, the underlying issue was hotly contested both in Kansas as well as in several other jurisdictions and was ultimately resolved nearly two years after Nieder's arrest. Moreover, we note that neither *Ryce II* nor *Birchfield* were unanimous decisions. We also note that although the statute was declared unconstitutional, our Supreme Court has not invalidated the entire implied consent statutory scheme. Thus, without a crystal ball, Trooper Phillips could not have been expected to know that the statute would later be found unconstitutional or that the implied consent advisory based on that law would be found to be coercive.

Here, a review of the record reveals that Trooper Phillips followed the law as it existed at the time of Nieder's arrest as was his duty to do. Furthermore, as our Supreme Court has found, the Kansas Legislature did not wholly abandon its duty to pass constitutional laws. See *State v. Perkins*, 310 Kan. 764, 770-71, 449 P.3d 756 (2019). Accordingly, suppression of the results of Nieder's breath test would not serve to deter misconduct by law enforcement officers.

*Results of Field Sobriety Tests*

Next, Nieder contends that the district court erred by allowing Trooper Phillips to testify about the results of the field sobriety tests admitted into evidence. Specifically, Nieder challenges the admission of Trooper Phillips' testimony about his performance during the walk-and-turn test and the one-leg-stand test. He contends that these tests are scientific in nature and require expert testimony to interpret the results.

We must first determine the relevance of the challenged evidence, in other words, whether the evidence is probative and material. A district court's determination that evidence is probative is reviewed for an abuse of discretion. However, a district court's determination that evidence is material is subject to de novo review. Next, we must consider whether the district court abused its discretion in determining whether the evidence is unduly prejudicial. See *State v. Frierson*, 298 Kan. 1005, 1015-16, 319 P.3d 515 (2014).

Here, Nieder does not dispute that the results of the field sobriety tests admitted into evidence were relevant. He also does not contend that the admission of the test results was unduly prejudicial. Instead, Nieder focuses solely on the argument that expert testimony was required to interpret the results of the walk-and-turn test and one-leg-stand test. Even so, Nieder candidly recognizes that the Kansas Supreme Court has previously held in *State v. Shadden*, 290 Kan. 803, 235 P.3d 436 (2010), that an expert witness is not required to interpret the results of the walk-and-turn test and one-leg-stand test.

In *Shadden*, our Supreme Court explained:

"The common component of lay and expert opinions regarding impairment or intoxication is the common knowledge that excessive alcohol consumption can cause problems with coordination, balance, and mental acuity. Each of these psychomotor skills is tested by the . . . one-leg-stand test and walk-and-turn test, assuring an opportunity to

7

observe and judge coordination, balance, and mental acuity. While a layperson may be able to observe some or all of these same skills, a law enforcement officer's opinion—while ultimately based on common knowledge—also draws from his or her training in administering these psychomotor tests and his or her experience in observing drivers' performances on these tests. Nevertheless, because the opinion rests on the common knowledge of the effects of excessive alcohol consumption, the officer provides pure opinion, not scientific, testimony." 290 Kan. at 820.

Furthermore, our Supreme Court found in *Shadden*:

"'Where officer testimony does not link test performance with a specific level of intoxication, the mere use of the term "test" or an indication by the officer that the defendant failed to perform the tests adequately and, therefore, "failed" the test does not lend scientific credibility to the test results. There is only a semantic difference between "field sobriety test" and "field sobriety exercise" or between "failing a test" and "being unable to perform an exercise adequately." An officer must be permitted to relate the activities a suspected drunk driver was asked to perform and to indicate that certain deficiencies in the performance of these activities indicated that the driver was intoxicated. . . .'" 290 Kan. at 829.

Of course, we are "duty bound to follow Kansas Supreme Court precedent absent some indication that the court is departing from its previous position." *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). Because we find no indication of such a departure, Nieder's argument fails. As an intermediate appellate court, it is not our role to overrule the precedent established by our Supreme Court. Furthermore, we do not find Nieder's arguments that *Shadden* is no longer good law to be persuasive. Rather, we find the analysis in *Shadden*—which delineates between the lay and expert witness—to continue to be applicable.

Accordingly, we find that the testimony of a trained law enforcement officer about an individual's ability to perform the walk-and-turn and one-leg-stand tests is admissible

when offered, as here, to prove an inference of intoxication rather than a specific blood alcohol level.

*Equal Protection*

Finally, Nieder contends that he was denied equal protection of law because other district court judges resolved similar motions while his motion remained undecided. The Fourteenth Amendment to the United States Constitution provides "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." The Equal Protection Clause of the Fourteenth Amendment requires that states treat similarly situated individuals similarly. *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 602, 128 S. Ct. 2146, 170 L. Ed. 2d. 975 (2008).

It is important to recognize that "the Fourteenth Amendment does not, in guaranteeing equal protection of the laws, assure uniformity of judicial decisions." *Milwaukee Elec. Ry. Co. v. Milwaukee*, 252 U.S. 100, 106, 40 S. Ct. 306, 64 L. Ed. 476 (1920). In other words, "[t]he United States Supreme Court has unambiguously held that there is no equal protection right to consistent judicial decisions, irrespective of whether the parties are similarly situated . . . ." *Brough v. State*, No. 105,865, 2012 WL 1237900, at *4 (Kan. App. 2012) (unpublished opinion). "Were it otherwise, every alleged misapplication of state law would constitute a federal constitutional question." *Beck v. Washington*, 369 U.S. 541, 555, 82 S. Ct. 955, 8 L. Ed. 2d 98 (1962).

In addition, a closer inspection of the district court cases, which Nieder presents as comparable, involved different offenses. In particular, the cases identified by Nieder in his brief involved specific charges for refusal to take a breath alcohol test in violation of K.S.A. 2015 Supp. 8-1025. See *State v. Patterson*, No. 2015-TR-353 (Kan. 1st Jud. Dist. Ct. February 3, 2017); *State v. Swinton*, No. 2015-TR-690 (Kan. 1st Jud. Dist. Ct. February 3, 2017); *State v. Kruse*, No. 2015-TR-626 (Kan. 1st Jud. Dist. Ct. January 31,

9

2017). Of course, K.S.A. 2016 Supp. 8-1025 is the statute ultimately found to be unconstitutional in *Ryce II*. 306 Kan. 682, Syl. By contrast, the State charged Nieder with driving under the influence. So, it is questionable whether there was dissimilar treatment at all. Furthermore, in light of the uncertainty over the law while *Ryce I* and *Ryce II* were pending, we do not find the district court's delay in ruling on the motion to suppress to be unreasonable. Accordingly, we conclude that the district court did not deny Nieder equal protection of law.

Affirmed.